## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PINCHAS RAUL,

           Plaintiff,

   v.

COLUMBIA BANKING SYSTEM,
INC., CRAIG D. EERKES, LAURA
ALVAREZ SCHRAG, FORD
ELSAESSER, MARK A.
FINKELSTEIN, ERIC S. FORREST,
THOMAS M. HULBERT, MICHELLE
MILLER LANTOW, RANDAL L.
LUND, TRACY MACK-ASKEW, S.
MAE FUJITA NUMATA, ELIZABETH
WHITEHEAD SEATON, CLINT E.
STEIN, and JANINE T. TERRANO,

           Defendants.

Civil Action No.

**COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES
LAWS**


<u>**JURY TRIAL DEMANDED**</u>

Plaintiff Pinchas Raul ("Plaintiff") by and through his undersigned attorneys, brings this

action on behalf of himself, and alleges the following based upon personal knowledge as to those

allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel,

which includes, without limitation: (a) review and analysis of public filings made by Columbia,

Inc. ("Columbia" or the "Company") and other related parties and non-parties with the United

States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases

and other publications disseminated by certain of the Defendants (defined below) and other

related non-parties; (c) review of news articles, shareholder communications, and postings on the

Company's website concerning the Company's public statements; and (d) review of other

publicly available information concerning Columbia and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Columbia and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the Company's proposed transaction with Umpqua Holdings Corporation ("Umpqua") (the "Proposed Transaction").

2.      On October 11, 2021, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Umpqua.  Pursuant to the terms of the Merger Agreement, Umpqua shareholders will receive 0.5958 of a share of Columbia stock for each Umpqua share they own. Upon completion of the Proposed Transaction, Umpqua shareholders will own approximately 62% and Columbia shareholders will own approximately 38% of the combined company

3.      On December 2, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4/A (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Columbia and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Columbia shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, the owner of Columbia shares.

9.     Defendant Columbia is incorporated under the laws of Washington and has its principal executive offices located at 1301 A Street, Tacoma, Washington 98402.   The Company's common stock trades on the NASDAQ under the symbol "COLB."

10.     Defendant Craig D. Eerkes ("Eerkes") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11.     Defendant Laura Alvarez Schrag ("Schrag") is and has been a director of Columbia at all times during the relevant time period.

12.     Defendant Ford Elsaesser ("Elsaesser") is and has been a director of Columbia at all times during the relevant time period.

13.     Defendant Mark A. Finkelstein ("Finkelstein") is and has been a director of Columbia at all times during the relevant time period.

14.     Defendant Eric S. Forrest ("Forrest") is and has been a director of Columbia at all times during the relevant time period.

15.     Defendant Thomas M. Hulbert ("Hulbert") is and has been a director of Columbia at all times during the relevant time period.

16.     Defendant Michelle Miller Lantow ("Lantow") is and has been a director of Columbia at all times during the relevant time period.

17.     Defendant Randal L. Lund ("Lund") is and has been a director of Columbia at all times during the relevant time period.

18.     Defendant Tracy Mack-Askew ("Mack-Askew") is and has been a director of Columbia at all times during the relevant time period.

19.     Defendant S. Mae Fujita Numata ("Numata") is and has been a director of Columbia at all times during the relevant time period.

20.     Defendant Elizabeth Whitehead Seaton ("Seaton") is and has been a director of Columbia at all times during the relevant time period.

21.     Defendant Clint E. Stein ("Stein") is and has been the Company's Chief Executive Officer and a director of Columbia at all times during the relevant time period.

22.     Defendant Janine T. Terrano ("Terrano") is and has been a director of Columbia at all times during the relevant time period.

23.     Defendants Eerkes, Schrag, Elsaesser, Finkelstein, Forrest, Hulbert, Lantow, Lund, Mack-Askew, Numata, Seaton, Stein, and Terrano are collectively referred to herein as the "Individual Defendants."

24.     The Individual Defendants, along with Defendant Columbia, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Columbia is a bank holding company and the holding company of Columbia Bank, a Washington state-chartered full service commercial bank. As of September 30, 2021, Columbia had 145 banking offices, including 70 branches in Washington State, 60 branches in Oregon and 15 branches in Idaho. As of September 30, 2021, Columbia had total assets of approximately $18.60 billion, total net loans receivable and loans held for sale of approximately $9.39 billion, total deposits of approximately $15.95 billion and approximately $2.32 billion in shareholders' equity.

### The Company Announces the Proposed Transaction

26.     On October 12, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> TACOMA, Wash. and PORTLAND, Ore., Oct. 12, 2021 /PRNewswire/ -- Columbia Banking System, Inc. ("Columbia") (Nasdaq: COLB), the parent company of Columbia State Bank, and Umpqua Holdings Corporation ("Umpqua") (Nasdaq: UMPQ), the parent company of Umpqua Bank, today announced that they have entered into a definitive agreement under which the companies will join together in an all-stock combination.
>
> Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, Umpqua shareholders will receive 0.5958 of a share of Columbia stock for each Umpqua share they own. Upon completion of the transaction, Umpqua shareholders will own approximately 62% and

Columbia shareholders will own approximately 38% of the combined company. Once the transaction is completed, the combined organization will be a leading West Coast franchise with more than $50 billion in assets.

Cort O'Haver, President and CEO of Umpqua, said, "This is an exciting combination that brings together two well-respected organizations and talented teams, accelerating our shared strategic objectives to create the leading regional bank headquartered in the West. Together, with increased scale, we'll have the ability to provide expanded opportunities for associates and serve customers through an even more comprehensive suite of solutions. We'll also be able to strengthen our ongoing investment in our communities and deliver tremendous value for shareholders. I look forward to partnering with the Columbia team to expand our market share as a combined organization."

Columbia President and CEO Clint Stein said, "This is a historic partnership that will enhance what both banks are able to do for clients, team members and communities, while driving significant value for our shareholders. Importantly, Umpqua shares our values and relationship-based business model. We believe blending the complementary expertise, services and innovative technology of both banks will position the combined organization as the preferred bank for business and families across the West. We look forward to bringing our companies together to better serve all stakeholders."

*       *       *

**Governance, Leadership Team and Headquarters**

The combined company will be led by an executive team composed of leaders from both Columbia and Umpqua. Cort O'Haver, President and CEO of Umpqua, will serve as the Executive Chairman and Clint Stein, President and CEO of Columbia, will serve as CEO. Chris Merrywell will serve as President of Consumer Banking, Tory Nixon as President of Commercial Banking, and Ron Farnsworth as CFO. Upon closing of the transaction, the combined company's board will consist of seven directors from each of Columbia and Umpqua with Craig Eerkes, the current Chairman of Columbia, serving as the Lead Independent Director.

The combined holding company will operate under the Columbia Banking System, Inc. name and will be headquartered in Tacoma, Washington. The combined bank will operate under the Umpqua Bank name and will be headquartered in the greater Portland metropolitan area. Other major subsidiaries and divisions will include Columbia Trust Company, CB Financial Services and Columbia Private Bank, which will operate under the banner of Columbia Wealth Management, as well as Financial Pacific Leasing, Inc. The company will trade under Columbia's ticker symbol (COLB) on the Nasdaq Stock Market.

**Timing and Approvals**

The transaction is expected to close in mid-2022, subject to satisfaction of customary closing conditions, including receipt of regulatory approvals and approvals from each company's shareholders.

**Advisors**

Keefe, Bruyette & Woods, A Stifel Company, is serving as financial advisor and Sullivan & Cromwell LLP is serving as legal counsel to Columbia. J.P. Morgan Securities LLC is serving as financial advisor and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Umpqua.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT**

27.    On December 2, 2021, the Company authorized the filing of the Registration Statement with the SEC.   The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

28.    Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
<u>Misrepresentations or Omissions Regarding the Financial Projections</u>**

29.    The Registration Statement contains projections created by management of the companies, but fails to provide material information concerning such.

30.    Specifically, with respect to the *Certain Internal Management Projections for Columbia*, the Registration Statement fails to disclose the inputs and assumptions underlying the

estimated long-term annual growth rates of 4.0% for Columbia's net income and earnings per share for the years 2025 and thereafter.

31.     With respect to the *Certain Internal Management Projections for Umpqua*, the Registration Statement fails to disclose the inputs and assumptions underlying:(i) estimated annual net income growth rates of 3.0% for the years ending 2024 through 2026; (ii) estimated annual asset growth rates of 3.0% as of December 31, 2024, 2025 and 2026; (iii) a ratio of risk-weighted assets to total assets of 82.3% for purposes of determining risk-weighted assets as of December 31, 2024, 2025 and 2026; and (iv) a target CET1 ratio of 10.0% as of each of December 31, 2021, 2022, 2023, 2024, 2025 and 2026.

32.     With respect to the *Certain "Street" Consensus Estimates for Columbia*, the Registration Statement fails to disclose the inputs and assumptions underlying: (i) estimated long-term annual net income to common shareholders growth rates of 4.0% for the years ending 2024 through 2026; (ii) estimated long-term annual asset growth rates of 3.0% as of December 31, 2024, 2025 and 2026; (iii) a ratio of risk-weighted assets to total assets of 62.7% for purposes of determining risk-weighted assets as of December 31, 2021, 2022, 2023, 2024, 2025 and 2026; and (iv) a target Common Equity Tier 1 ratio of 10.0% as of each of December 31, 2021, 2022, 2023, 2024, 2025 and 2026.

33.     With respect to the *Certain Estimated Synergies Attributable to the Mergers*, the Registration Statement fails to disclose the inputs and assumptions underlying: (i) the estimated pre-tax annual cost savings of $135 million, phased in approximately 12% in 2022, 66% in 2023, and 100% in 2024, with a 3% growth in annual cost savings starting in 2023; (ii) that the total restructuring charge was estimated to be $236 million pre-tax ($191 million after-tax); and (iii) the hypothetical June 30, 20222 closing date for the mergers.

34.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Financial Opinions

35.     The Registration Statement contains the financial analyses and opinion of Keefe, Bruyette & Woods, A Stifel Company ("KBW") and J.P. Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

36.     With respect to KBW's *Columbia and Umpqua Selected Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each company selected for the analysis.

37.     With respect to KBW's *Columbia Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the discount rate range of 9.50% to 13.50%; (ii) the present value of the implied future excess capital available for dividends that Columbia could generate over the period from June 30, 2021 through December 31, 2025 as a standalone company; (iii) the present value of Columbia's implied terminal value over the period from June 30, 2021 through December 31, 2025; (iv) the inputs and assumptions underlying KBW's assumption that Columbia would maintain a tangible common equity to tangible assets ratio of 8.00%; and (v) the inputs and assumptions underlying KBW's use of the terminal reference range of 12.0x to 16.0x.

38.     With respect to KBW's *Umpqua Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the discount rate range of 9.50% to 13.50%; (ii) the present value of the implied future excess capital available for dividends that Umpqua could generate over the period from June 30, 2021 through December 31, 2025 as a standalone company; (iii) the present value of Umpqua's implied terminal value over the period from June 30, 2021 through December 31, 2025; (iv) the inputs and assumptions underlying KBW's assumption that Umpqua would maintain a tangible common equity to tangible assets ratio of 8.00%; and (v) the inputs and assumptions underlying KBW's use of the utilized terminal reference range of 10.0x to 14.0x.

39.     With respect to KBW's *Pro Forma Combined Dividend Discount Model Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying KBW's use of the discount rate range of 9.50% to 13.50%; (ii) the present value of the implied future excess capital available for dividends that Pro Forma Entity could generate over the period from June 30, 2021 through December 31, 2025 as a standalone company; (iii) the present value of Pro Forma Entity's implied terminal value over the period from June 30, 2021 through December 31, 2025; (iv) the inputs and assumptions underlying KBW's assumption that the Pro Forma Entity would maintain a tangible common equity to tangible assets ratio of 8.00%; and (v) the inputs and assumptions underlying KBW's use of the terminal reference range of 11.0x to 15.0x.

40.     With respect to J.P. Morgan's *Umpqua Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies selected for the analysis.

41.     With respect to J.P. Morgan's *Umpqua Dividend Discount Analysis*, the

Registration Statement fails to disclose: (i) the terminal value calculated; (ii) the inputs and assumptions underlying J.P. Morgan's use of the multiple range of 10.5x to 12.5x; (iii) the inputs and assumptions underlying J.P. Morgan's determination of Umpqua's cost of equity range of 10.5% to 12.5%; (iv) the inputs and assumptions underlying J.P. Morgan's determination of Umpqua's marginal tax rate of 25.0%; and (v) the inputs and assumptions underlying J.P. Morgan's use of Umpqua's Common Equity Tier 1 target of 10.0%.

42. With respect to the J.P. Morgan's *Columbia Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the companies selected for the analysis.

43. With respect to J.P. Morgan's *Columbia Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the terminal value calculated; (ii) the inputs and assumptions underlying J.P. Morgan's use of the multiple range of 12.4x to 14.5x; (iii) the inputs and assumptions underlying J.P. Morgan's determination of Columbia's cost of equity range of 9.5% to 11.5%; (iv) the inputs and assumptions underlying J.P. Morgan's determination of Columbia's marginal tax rate of 27.0%; and (v) the inputs and assumptions underlying J.P. Morgan's determination of Columbia's Common Equity Tier 1 target of 10.0%.

44. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

45.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

46.     The Registration Statement contains information concerning the process leading up to the Proposed Transaction, but fails to disclose material information concerning such.

47.     Specifically, the Registration Statement fails to disclose sufficient information concerning the number and nature of all confidentiality agreements entered into between the Company and any interested third party during the sales process, as well as whether any agreement contained "don't-ask, don't waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from proposing an alternate transaction.

48.     The Registration Statement fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction which must be disclosed to stockholders.

49.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

54.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger

Agreement and the preparation of the Company's financial projections.

58.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Columbia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Columbia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

67.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 10, 2021                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*